**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

======================================

JOHN MUELLER,

                *Plaintiff*,

      v.

ESTATE TOWNHOUSES, LLC, and LAKEVIEW
 TOWNHOUSES,

              *Defendants.*

======================================

**COMPLAINT**

Docket No.: 5:25-cv-129(ECC/TWD)

Plaintiff, JOHN MUELLER (hereafter "Plaintiff"), by and through his attorneys, GATTUSO & CIOTOLI, PLLC, allege upon knowledge to herself and upon information and belief as to all other matters as follows against Defendants ESTATE TOWNHOUSES, LLC, and LAKEVIEW TOWNHOUSES.

**PRELIMINARY STATEMENT**

1.      Plaintiff brings this action under the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 206, 207, and 216(b); New York Labor Law § 190 *et seq.*, New York Labor Law §§ 650 *et seq.* and 663; 12 New York Codes, Rules and Regulations (hereinafter referred to as "NYCRR") §§ 142 *et. seq.* to recover unpaid wages and overtime compensation, as well as related damages owed to him by Defendants.

2.      Plaintiff brings this action under the New York State Human Rights Law ("NYSHRL"), NY Exec. Law § 296 et. seq., seeking redress for Defendants violating its legal obligations and engaging in unlawful disability discrimination.

1

**PARTIES**

3.      Plaintiff is an individual who resides in Pennellville, NY, located in Oswego County, State of New York.

4.      Defendant Estate Townhouses, LLC, ("Defendant") is a domestic limited liability corporation in the State of New York. Its primary place of business is located at 250 S Clinton St, Ste 502, Syracuse, NY 13202.

5.      Defendant Lakeview Townhouses is, upon information and belief, a foreign corporation authorized to do business in New York State. Its primary place of business is located at 350 Stanwich Road, Greenwich, CT 06830.

6.      Upon information and belief, Defendants Estate Townhouses, LLC, and Lakeview Townhouses are owned and managed by Rahul Chadra.

7.      Defendant Estate Townhouses, LLC, owns and manages a townhouse/apartment complex called Estate Townhouses, located at 412 County Rte. 10, Pennellville, NY 13132.

8.      Defendants hired and paid Plaintiff to work full-time as a Maintenance Supervisor at Estate Townhouses.

9.      At all relevant times, Defendants were Plaintiff's rightful employers.

**JURISDICTION AND VENUE**

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11.     This Court also has supplemental jurisdiction over the state-law class claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over the Defendants because Defendants have conducted substantial business in New York, including employing Plaintiff in New York.

13. Venue for this action in the Northern District of New York under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of New York.

## FACTUAL ALLEGATIONS

### I. Plaintiff's Diagnosed Heart Condition

14. Plaintiff is currently 54 years old.

15. In September 2015, Plaintiff was diagnosed with Congestive Heart Failure.

16. Plaintiff is currently treated and evaluated by the Syracuse VA Medical Center for his heart condition. Beforehand, Plaintiff was a patient of SJH Cardiology Associates.

17. Prior to the events at issue, Plaintiff had suffered a heart attack two (2) times in his life. The first occurred on/around September 24, 2015. The second occurred on February 10, 2024.

18. In connection with his heart attack in February 2024, Plaintiff was treated by SJH Cardiology Associates from February 10, 2024 to February 11, 2024, for what was diagnosed as a Non-ST-Segment Elevation Myocardial Infarction (NSTEMI), which is a less severe form of a heart attack. Plaintiff was discharged with no physical restrictions, and was advised he could "*resume [his] usual activities*."

19. Plaintiff takes prescribed medications for his heart condition, and adheres to a prescribed diet to help with his condition.

20. Plaintiff has had an automated defibrillator implanted in him since 2018 that provides aid when needed.

21. Other than a temporary lifting restriction imposed after receiving certain treatments (ex. no lifting more than 5lbs for the next 1-5 days), Plaintiff has never had any kind of medically imposed physical or work restriction as a result of his heart condition.

**II. Plaintiff Hired by Defendants as a Maintenance Supervisor**

22.     Plaintiff was hired by Defendants on/around June 7, 2024, as the Maintenance Supervisor for the apartment complex, Estate Townhouses, located at 412 County Rte. 10, Pennellville, NY 13132.

23.     Estate Townhouses consists of four (4) separate residential buildings on the property, and has 29 total apartment/townhome units.

24.     As the Maintenance Supervisor, Plaintiff's job duties consisted of performing repairs and conducting preventative maintenance throughout the apartment complex, completing grounds-keeping tasks (ex. mowing the lawn, weed whacking, pressure washing, etc.), cleaning apartments and buildings, completing apartment turns as needed, and completing any other tasks as instructed by Defendants.

25.     Plaintiff's duties and responsibilities did not involve or relate to managing Defendants' business or any subdivision of them.

26.     Plaintiff's duties and responsibilities did not involve the performance of any office or non-manual work directly related to the management or business operations of Defendants.

27.     Plaintiff did not direct or supervise any other employees or personnel who worked for Defendants.

28.     Plaintiff's duties and responsibilities did not require advanced knowledge in a field of science or learning, or knowledge acquired through specialized intellectual instruction.

29.     At all relevant times, the Property Manager for Estate Townhouses was and has been Ms. Candace Knarr, who was Plaintiff's direct supervisor.

30.     Plaintiff initially started working for Defendants part-time in June 2024, earning $18.00 per hour and working approximately 20-22 hours per week on average.

31. In late June/early July 2024, Plaintiff was offered by Defendants to become a full-time Maintenance Supervisor for Estate Townhouses.

32. Through direct verbal conversations and negotiations with Ms. Knarr, Plaintiff set the terms that he would accept Defendants' job offer if he was still paid $18.00 per hour for all hours worked, and received an apartment on the property for free to live in.

33. Ms. Knarr directly told Plaintiff in verbal conversation that Defendants agreed to pay him $18.00 per hour for all hours worked as the full-time Maintenance Supervisor for Estate Townhouses, plus provide him with an apartment unit on the property to live in for free.

34. Defendants never provided Plaintiff with any kind of written agreement memorializing the terms of his compensation and employment, nor expressed any intent to be bound only by an executed written agreement.

35. Defendants never asked Plaintiff to provide any kind of formalized written agreement or documentation memorializing the terms of his compensation and employment.

36. Plaintiff accepted Defendants' offer to become the full-time Maintenance Supervisor at Estate Townhouses based on the verbal agreement and assurance by Property Manager Candace Knarr that Defendants would pay him $18.00 per hour and provide an apartment for free.

37. Plaintiff left his full-time job at National Grid to work full-time for Defendants based on the verbal agreement and assurances he received from Ms. Knarr about the compensation he would be owed by Defendants.

38. Plaintiff became a full-time employee for Defendants on/around July 9, 2024.

39. Plaintiff was the only Maintenance worker for Defendant's Estate Townhouses property.

40. Prior to and throughout the entire duration of his employment, Defendants were aware of Plaintiff's diagnosed heart condition and that he previously had two (2) heart attacks.

41. Plaintiff did not need a workplace accommodation in order to perform the essential functions of his job for Defendants.

42. The only times Plaintiff needed any kind of assistance with his work was when he had to move heavy furniture or objects in and out of apartment units, or up and down stairs, that he could not do by himself.

43. Defendants never asked Plaintiff to provide any kind of medical documentation or doctor's notes in connection with his heart condition or his ability to perform his job at the time of hiring him or after.

44. Defendants did not ask Plaintiff if he needed a workplace accommodation due to his heart condition.

45. Defendants did not advise or request that Plaintiff apply for any kind of workplace accommodation due to his heart condition.

46. Defendants advised Plaintiff that if he ever needed assistance with certain job task, additional personnel could be provided to help.

47. Throughout the entire duration of his employment for Defendants, Plaintiff was an exemplary employee, having completed all of his assignments and met all expectations set by the Defendants while often going above and beyond when needed.

### III. Plaintiff's Compensation and Classification

48. After Plaintiff started working for Defendants full-time, Defendants did not pay Plaintiff an hourly wage of $18.00 per hour as originally promised and agreed upon.

6

49.    Defendants unilaterally decided to pay Plaintiff a flat salary of $1,000 per month, paid out in two (2) $500 payments throughout the month, one on the 15th and the other on the 30th/31st.

50.    Plaintiff was not paid by his time, the number of units he maintained, or by the number of individual projects he completed for Defendants.

51.    Defendants did not provide Plaintiff with any wage notices containing Plaintiffs rate or rates of pay and basis thereof.

52.    Defendants did not provide Plaintiffs with proper and accurate pay statements.

53.    Upon information and belief, Defendants did not maintain proper and complete records of hours worked by Plaintiff and rates of pay, as well as other employee records.

54.    Defendants did not deduct appliable taxes and withholdings from Plaintiff's regular pay.

55.    Defendants provided Plaintiff with an apartment on the premises at Estate Townhouses to live in. Plaintiff was originally placed in a 2-bedroom apartment that Defendants credited him approximately $1,260 per month for. On/around October 8, 2024, Plaintiff moved into a 3-bedroom apartment that Defendants credited him $1,550 per month for.

56.    Upon information and belief, any pay statements Plaintiff received from Defendants did not list or account for his apartment as part of his regular income and rate of pay.

57.    At all relevant times, Plaintiff's total compensation from Defendants was less than $684 per week or $35,568 annually.

58.    As a full-time employee, Plaintiff was told by Defendants to work Mondays through Saturdays, and at least six (6) hours a day.

59. Due to the amount of work and property maintenance needed, Plaintiff ended up working 6-7 days per week, and working at least 45-50 hours per week, if not more.

60. Plaintiff would start his work at around 8:30am every workday.

61. Defendants did not provide Plaintiff with any way to track or record work hours.

62. Numerous tenants at the Estate Townhouses complex witnessed Plaintiff working this number of hours each week, and even personally assisted him at times, which Defendants were aware of.

63. Defendants classified Plaintiff as an independent contractor, not as an employee.

64. Plaintiff was not self-employed, and did not own or operate any business of his own.

65. Upon information and belief, Plaintiff did not sign any written agreement with either Defendant stating a mutual intent and understanding that he would be an independent contractor.

66. Plaintiff complained numerous times to Ms. Knarr that he should not be classified as a 1099 independent contractor.

67. Defendants, through Ms. Knarr, told Plaintiff that because "there were fewer than 10 employees," Defendants could classify him as an independent contractor instead of a regular employee.

68. Plaintiff's income from Defendants was his only source of income once he started working for Defendants full-time.

69. Plaintiff was hired to maintain and upkeep Defendants' entire apartment complex property, Estate Townhouses.

70. Defendants unilaterally determined the amount of Plaintiff's compensation and how he would be paid.

71. Defendants directly assigned work tasks to Plaintiff, including where and what Plaintiff worked on.

72. Defendants assigned Plaintiff work tasks through messages via WhatsApp.

73. Ms. Knarr would also communicate work tasks to Plaintiff directly either via text or over phone calls.

74. Defendants required that Plaintiff join an app called Buildium, through which Plaintiff would receive work orders submitted by Defendants and Defendants' tenants at Estate Townhouses.

75. Plaintiff was required to attend and participate in daily morning conference calls with the rest of Defendants' staff to go over what work each employee would be performing that given day and where, and receive work tasks.

76. Plaintiff was required to join a group chat using the WhatsApp to communicate with other members of Defendants' staff about assignments and work-related matters.

77. Defendants' Property Manager, Candace Knarr, was directed to monitor Plaintiff's work throughout each workday and have Plaintiff check in with her on his progress.

78. Plaintiff was required to follows specific standards and procedures set by Defendants when it came to performing general repairs and maintenance, life safety checks, deep cleaning, and final preparations for unit turnovers.

79. Plaintiff purchased tools and materials for work using Defendants' funds.

80.     Defendants supplied Plaintiff with all of the outdoor maintenance repair supplies and equipment he used on the job, such as the lawnmower, weed whackers, rakes, shovels, and pressure washer.

**IV. Defendants Terminated Plaintiff's Employment After He Suffered a Heart Attack**

81.     On/around November 7, 2024, Plaintiff began to experience chest pains. He did not experience any other physical symptoms at the time.

82.     On November 13, 2024, Plaintiff admitted himself to the Syracuse VA Medical Center to be evaluated.

83.     Plaintiff was diagnosed as having suffered a NSTEMI, similar to what he experienced back in February 2024. Plaintiff was also treated for Acute Coronary Syndrome.

84.     While at the VA Medical Center, Plaintiff maintained communication with Ms. Knarr through the WhatsApp, keeping her updated on the status of his condition and treatment.

85.     On November 13, 2024, Plaintiff informed Ms. Knarr that he was going to have heart surgery. Upon receiving this information, Ms. Knarr immediately began to pressure Plaintiff that he should apply for disability. When Plaintiff expressed that he did not want to go on disability, and that his doctors may not even approve it, Ms. Knarr told him "*Yeah but 3 heart attacks should be a sign you need it,*" and "*working will kill you.....*" She also told Plaintiff, "*Find something light to do.*"

86.     Plaintiff's surgery on November 14, 2024, was successful, and he was fully discharged on November 15, 2024, with no physical restrictions, which he advised Defendants of.

87.     Shortly after being discharged from the hospital, Plaintiff spoke to Ms. Knarr over the phone. During this conversation, Ms. Knarr told Plaintiff that Defendants were terminating him.

88.     Specifically, Ms. Knarr told Plaintiff that because of his heart condition, Defendants viewed him as "*a liability*." Ms. Knarr also stated that someone else had already hired a new person to take over Plaintiff's job.

89.     In response, Plaintiff re-emphasized to Ms. Knarr that he was fully cleared without any physical restrictions, that his overall condition was the same as it had been at the time he was first hired by back in June 2024, and that he could provide any necessary medical documentation to Defendants in order to verify his ability to perform his job safely.

90.     Ms. Knarr later asked that they speak in person. While they were unable to meet right away, Ms. Knarr told Plaintiff through a WhatsApp message, "*don't do any work until we talk…*"

91.     Despite being informed by Plaintiff that he did not have any restrictions and could return to work as normal, Defendants did not change their decision to terminate him.

92.     Approximately one (1) week after being terminated, Plaintiff received a call from Defendants' owner, Rahul Chadra, to check on how he was doing. During this call, Plaintiff emphasized to Mr. Chadra that he was fine and physically able to work, and expressed his objections to being terminated.

93.     Mr. Chadra reaffirmed the decision to terminate Plaintiff's employment.

94.     Despite terminating Plaintiff for thinking he could not perform his job anymore, Mr. Chadra promised Plaintiff to offer him "*side hustles and jobs*" when their new Maintenance Supervisor was not available, and that he would be their "*first phone call*" when they "*need extra help.*" Mr. Chadra also told Plaintiff he would provide a positive reference for any job he applied for.

11

**V.      Defendants Engaged in Willful Violations of the Fair Labor Standards Act (FLSA), New York Labor Law (NYLL), and New York State Human Rights Law (NYSHRL)**

**i.       Willful Violations of the FLSA and NYLL**

95.      Upon information and belief, Defendants know they are subject to the FLSA and NYLL.

96.      Defendants intentionally misclassified Plaintiff as an independent contractor.

97.      Defendants knew that Plaintiff should have been classified as a non-exempt hourly employee under the FLSA and NYLL.

98.      Defendants knew the FLSA and NYLL require them to pay Plaintiff for all hours he performed compensable work.

99.      Defendants knew the NYLL requires them to pay Plaintiff at least the mandatory State minimum wage for all hours he performs compensable work up to 40 hours in a workweek.

100.     Defendants knew Plaintiff was not compensated at an amount or rate that satisfied the New York State minimum wage requirement for all hours he worked up to 40 hours in a workweek.

101.     Defendants knew that Plaintiff worked more than 40 hours in at least one workweek during the relevant period of time.

102.     Defendants knew the FLSA and NYLL require them to pay Plaintiff overtime at rates not less than 1.5 times his regular rates of pay – based on all remuneration – for all hours worked in excess of 40 in a workweek.

103.     Defendants knew they did not pay Plaintiff any overtime wages for hours worked in excess of 40 in a workweek.

104.    Thus, Defendants knew, should have known, or recklessly disregarded the fact that they did not pay Plaintiff for all hours, including overtime hours, that he perform compensable work.

105.    In other words, Defendants knew, should have known, or recklessly disregarded the fact that they failed to pay Plaintiff minimum wages under NYLL and overtime wages for all overtime hours worked, in willful violation of the FLSA and NYLL.

**ii.    Willful Violations of the New York State Human Rights Law**

106.    Defendants know they are subject to the New York State Human Rights Law.

107.    Defendants hired Plaintiff while knowing about his heart condition and relevant medical history.

108.    After Plaintiff suffered a heart attack in November 2024, Defendants subjectively perceived and treated Plaintiff as disabled based on its belief that his heart condition compromised his ability to perform his job.

109.    Defendants intentionally failed to engage in any kind of good faith interactive process with Plaintiff in order to evaluate if he was disabled, if he required a workplace accommodation in order to perform his job, and in the event that he did need an accommodation, whether such an accommodation would cause Defendants to suffer an undue hardship.

110.    Defendants never asked Plaintiff to provide any kind of medical documentation regarding his physical condition and his ability to safely perform his job duties with or without an accommodation.

111.    Defendants never asked Plaintiff to provide any notes or records from his medical care professionals in connection with his heart condition and ability to work safely.

13

112.    Defendants did not provide Plaintiff with the opportunity to provide medical documentation to corroborate that he was medically cleared to work without restrictions prior to terminating his employment.

113.    Defendants never asked or had Plaintiff submit to a medical evaluation by its own medical professional(s) to assess and determine if he was unable to perform the essential functions of his job safely with or without an accommodation.

114.    Upon information and belief, Defendants did not consult with any medical professional in order to assess and determine whether he could safely perform the essential functions of his job.

115.    Thus, Defendants intentionally discriminated against Plaintiff, and terminated his employment, based on his wrongfully perceived disability and limitations without any credible medical evidence or evaluation in support.

## VI. Damages Accrued by Plaintiff

116.    Defendants failed to pay Plaintiff the necessary minimum wage required under New York Labor.

117.    Defendants failed to pay Plaintiff overtime wages for all hours worked by Plaintiff in excess of 40 hours each work week.

118.    Defendants failed to pay Plaintiff in accordance with the verbal agreement made regarding his compensation rate for all hours worked.

119.    As a result of his termination by Defendants, Plaintiff lost his only source of income, causing him to fall behind on payments for living expenses and bills, and needing to accrue debt.

14

120.    As of the date of this Complaint, Plaintiff has applied for multiple job openings, but has not been able to secure new employment.

121.    Because he is no longer an employee, Defendants ceased crediting him for an apartment, and is now charging him rent in the amount of $1,550 per month.

122.    Plaintiff has suffered from severe stress and anxiety as a result of the Defendants' willful actions and the subsequent consequences from them.

## FIRST CAUSE OF ACTION

## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

123.    Plaintiff repeats each and every allegation previously made here and as if set forth fully herein.

124.    Plaintiff brings this claim for relief pursuant to the Fair Labor Standards Act ("FLSA") at 29 U.S.C. § 201, et seq.

125.    Plaintiff was an "employee" within the meaning contemplated in Fair Labor Standards Act ("FLSA"), 29 U.S.C. §203(e).

126.    Defendants constitute an "employer" within the meaning contemplated in the FLSA, 29 U.S.C. § 203(d) and consequently, are liable for violations of the FLSA.

127.    Defendants intentionally misclassified Plaintiff as an independent contractor.

128.    Based on the nature of the relationship between Plaintiff and Defendants, and the level of controlled exercised by Defendants over Plaintiff's job, Plaintiff should have been classified as a non-exempt hourly employee.

129.    Based on the nature of Plaintiff's duties as a Maintenance Supervisor, his position did not qualify for any exemption from the FLSA's overtime requirements.

130. The flat amount of compensation Defendants provided to Plaintiff per month did not surpass the minimum salary amount under the FLSA to qualify for exemption from the FLSA's overtime requirements.

131. Plaintiff regularly worked over 40 hours per week for Defendants.

132. Defendants violated the FLSA by failing to pay Plaintiff overtime wages of at least 1.5 times his regular rates of pay – based on all remuneration – for all hours worked in excess of 40 a workweek.

133. Plaintiff has been harmed as a direct and proximate result of Defendants' unlawful conduct because he has been deprived of wages owed for work performed and from which Defendants derived a direct and substantial benefit.

134. Defendants knowingly, willfully, and/or in reckless disregard of the FLSA carried out this pattern and practice of misclassifying Plaintiff and failing to pay Plaintiff overtime compensation at the required premium rate for all overtime hours worked.

135. Defendants' failure to pay Plaintiff wages for all overtime hours worked was neither reasonable, nor was the decision not to pay overtime compensation for all overtime hours worked made in good faith.

136. Accordingly, Plaintiff is entitled to recover the difference between wages actually paid and the overtime wages actually earned, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

**SECOND CAUSE OF ACTION**

**FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL**

137. Plaintiff repeats each and every allegation previously made here and as if set forth fully herein.

138.    Pursuant to Article Six of the NYLL, workers, such as Plaintiff, are protected from wage underpayments and improper employment practices.

139.    Defendants' conduct violates the NYLL and its implementing regulations, NYLL §§ 190, et seq. and 650, et seq.; 12 NYCRR Part 142-3.2.

140.    At all relevant times, Defendants were subject to the NYLL because Defendants were each a covered "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

141.    At all relevant times, Defendants employed Plaintiff as a covered "employee" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

142.    Defendants intentionally misclassified Plaintiff as an intendent contractor.

143.    Based on the nature of the relationship between Plaintiff and Defendants, and the level of controlled exercised by Defendants over Plaintiff, Plaintiff should have been classified as a non-exempt hourly employee.

144.    Based on the nature of Plaintiff's duties as a Maintenance Supervisor, his position does not qualify for any exemption from the NYLL's overtime requirements.

145.    The flat amount of compensation Defendants provided to Plaintiff per month did not surpass the minimum salary amount under the NYLL to qualify for exemption from the NYLL's overtime requirements.

146.    The NYLL requires employers, like Defendants, to pay non-exempt employees overtime wages at rates not less than 1.5 times his regular rates of pay – based on all remuneration – for all hours worked over 40 in a workweek. See NYLL §§ 190, et seq. and 650, et seq.; 12 NYCRR Part 142-3.2 and 142-3.14.

147.    Plaintiff is entitled to overtime pay under the NYLL.

17

148.    Defendants violated the NYLL by employing Plaintiff, a non-exempt employee, for workweeks longer than 40 hours without paying him overtime wages at rates of at least 1.5 times his regular rates of pay for all hours worked in excess of 40 in a workweek. See NYLL §§ 190, et seq. and 650, et seq.; 12 NYCRR Part 142-3.2 and 142-3.14.

149.    Defendants' unlawful conduct harmed Plaintiff by depriving him of the premium overtime wages he was owed.

150.    Defendants acted willfully, without a good faith basis, and with reckless disregard of clearly applicable to New York law.

151.    Thus, Defendants' NYLL violations with respect to Plaintiff were "willful" within the meaning of Section 198 of the NYLL. See NYLL § 198.

152.    Accordingly, Defendants owe Plaintiff the difference between the wages actually paid and the overtime wages actually earned, plus interest on those amounts, penalties, and attorneys' fees and costs. See NYLL §§ 198(4) and 663(1).

## THIRD CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGE UNDER THE NYLL

153.    Plaintiff repeats and re-alleges the allegations set forth above as if fully set forth herein.

154.    Pursuant to Article Six of the NYLL, workers, such as Plaintiff, are protected from wage underpayments and improper employment practices.

155.    Defendants' conduct violates the NYLL and its implementing regulations, NYLL §§ 190, et seq. and 650, et seq.; 12 NYCRR Part 142-3.2.

156.    At all relevant times, Defendants were subject to the NYLL because Defendants were each a covered "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

18

157. At all relevant times, Defendants employed Plaintiff as its covered "employee" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

158. Based on the nature of the relationship between Plaintiff and Defendants, and the level of controlled exercised by Defendants over Plaintiff, Plaintiff should have been classified as a non-exempt hourly employee.

159. Based on a 40-hour workweek, the flat amount of compensation Defendants provided to Plaintiff per month fails to satisfy the minimum wage requirements in New York State.

160. Defendants' unlawful conduct harmed Plaintiff by depriving him of wages he was owed.

161. Defendants acted willfully, without a good faith basis, and with reckless disregard of clearly applicable to New York law.

162. Thus, Defendants' NYLL violations with respect to Plaintiff were "willful" within the meaning of Section 198 of the NYLL. See NYLL § 198.

163. Accordingly, Defendants owe Plaintiff the difference between the wages actually paid and the wages actually earned, plus interest on those amounts, penalties, and attorneys' fees and costs. See NYLL §§ 198(4) and 663(1).

**FOURTH CAUSE OF ACTION**

**FAILURE TO PROVIDE ANNUAL WAGE NOTICES**

**AND PAY STATEMENTS UNDER NYLL**

164. Plaintiff repeats and re-alleges the allegations set forth above as if fully set forth herein.

165. Defendants have willfully failed to provide Plaintiff with wage notices, as required by NYLL § 195(1), in English or in the language identified as his primary language, containing

19

Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names use by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; plus, such other information as the commissioner deems material and necessary.

166. Defendants have willfully failed to Plaintiff with proper and accurate pay statements, as required by NYLL § 195(3), listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; accurate recording of all hours due to be paid; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

167. Plaintiff did not receive all required wage notices and pay statements during his employment with Defendants.

168. Through its knowing or intentional failure to provide Plaintiff notices and pay statements required by the NYLL, Defendants willfully violated NYLL §§ 191(1) and (3) and the supporting New York State Department of Labor Regulations.

169. According to NYLL § 198-1(b), Plaintiff is entitled to $50 for every day he did not receive a wage notice up to a total of $5,000, together with costs and reasonable attorney's fees.

170. According to NYLL § 198-1(b), Plaintiff is entitled to $250 for every day he did not receive a proper and accurate pay statement up to a total of $5,000, together with costs and reasonable attorney's fees.

20

171.    By the foregoing reasons, Defendants violated NYLL §§ 195(1) and (3) and are liable to the Plaintiffs pursuant to NYLL 198-1(b) in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

## FIFTH CAUSE OF ACTION

## NEW YORK STATE HUMAN RIGHTS LAW – DISABILITY DISCRIMINATION

172.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

173.    The New York State Human Rights Law (NYSHRL) applies to all employers within New York State, regardless of the number of employees. NY Exec. Law § 292(5).

174.    All antidiscrimination provisions and protections of the NYSHRL are equally afforded to non-employees, including those it classified as independent contractors. NY Exec. Law § 296-d.

175.    NYSHRL requires covered private employers to provide reasonable work accommodations to eligible employees with disabilities, provided that such accommodations do not impose an undue hardship on the employer.

176.    The NYSHRL prohibits covered employers from discriminating against employees based upon an individual's past, current, or perceived disability. Failure to provide a reasonable accommodation to an employee's known disability, and/or terminating an employee who is able to perform his/her essential job functions with or without a reasonable accommodation is a recognized form of discrimination under the NYSHRL.

177.    At all relevant time, Plaintiff qualified as a protected employee or non-employee under the NYSHRL.

178. At all relevant times, Defendants qualified as a covered employer within the meaning of the NYSHRL.

179. Plaintiff had no medically imposed physical restrictions due to his heart condition, and never required a workplace accommodation in order to perform the essential functions of his job as Maintenance Supervisor.

180. Plaintiff met all job requirements for his position, and routinely completed all of his job responsibilities without any issues.

181. Defendants terminated Plaintiff because he suffered a heart attack, and subjectively perceived and treated him as disabled.

182. Under NYSHRL, employers must engage in a timely, good faith, interactive process with a worker with a known or suspected condition, such as a heart disease.

183. Defendants did not engage in any good faith interactive process in order to assess and determine if Plaintiff was disabled, if he needed an accommodation in order to perform his essential job functions, and if such an accommodation would impose an undue burden on it.

184. Defendants terminated Plaintiff without providing him with the opportunity to produce readily available medical documentation that would verify he could have performed all the essential functions of his job, with or without an accommodation, and without creating a direct threat to himself or others.

185. Plaintiff returning to work, with or without an accommodation, would not have posed a direct threat to either Plaintiff or others.

186. Despite the fact that Plaintiff could still perform his job safely without any restrictions or accommodations, Defendants terminated his employment because he had a heart attack.

187.     Defendants' actions were intentional, willful, and made in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

188.     Plaintiff has suffered damages as a result of Defendants' unlawful actions, including but not limited to loss of earnings; loss of benefits; mental anguish; and emotional distress.

## SIXTH CAUSE OF ACTION

## BREACH OF VERBAL CONTRACT

189.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

190.     Plaintiff and Defendants entered into a verbal agreement for Plaintiff to work for Defendants as a full-time Maintenance Supervisor for its apartment complex property, and that Plaintiff would be compensated in the amount of $18.00 per hour.

191.     Plaintiff relied to his detriment on the verbal agreement provided by Defendants that he would receive $18.00 per hour for all hours worked for Defendants after becoming a full-time employee in July 2024.

192.     Defendants failed to perform its contractual duties by not compensating Plaintiff in accordance with the terms that were verbally agreed to, and greatly underpaid him for his hours worked.

193.     Defendants did not provide any notice to Plaintiff prior to him starting full-time that they would not be paying him $18.00 per hour for all hours worked.

194.     Defendants' actions were intentional, willful, and made in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

23

195.    Plaintiff has suffered financial losses as a result of Defendants' breach of their verbal contract in the form of lost income.

## JURY TRIAL

Plaintiff demands a jury trial as to all issues triable by jury.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant her the following relief:

A.    An Order finding Defendants liable to Plaintiff for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to unpaid wages;

B.    An Order finding Defendants liable to Plaintiff for unpaid overtime wages owed under the NYLL, plus liquidated damages in an amount equal to his unpaid wages;

C.    Judgement awarding Plaintiff all unpaid and untimely wages, unpaid overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or NYLL;

D.    A declaratory judgment that Defendants intentionally violated its obligations and Plaintiff's rights under the NYSHRL;

E.    A declaratory judgment that a valid verbal contract existed between Plaintiff and Defendants for Plaintiff's employment, and that Defendants breached said contract;

F.    Recoverable back pay with interest;

G.    Expenses incurred by Plaintiff as a result of Defendants' actions;

H.    All available front pay,

I.    All available compensatory and punitive damages;

J.    Attorneys' fees and costs associated with this action;

K.    Any other relief that the Court deems proper.

24

Dated:  January 28, 2025

Yours,

*s/ Ryan Files*

Ryan Files, Esq.
GATTUSO & CIOTOLI, PLLC
*Attorneys for Plaintiff*
7030 East Genesee Street
Fayetteville, New York 13066
(315) 314-8000
(315) 446-7521 (fax)
rfiles@gclawoffice.com